# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

ALBERT SINGLETARY,

                              Plaintiff,

                              DECISION & ORDER

          -vs-

                              10-CV-6627-CJS

SENTRY GROUP (SAFE),

                              Defendant.

## APPEARANCES

| | |
|---|---|
| For Plaintiff: | Albert Singletary *pro se*<br>72 Cuba Place<br>Rochester, NY 14605 |
| For Defendant: | James C. Holahan, Esq.<br>Bond Schoeneck & King PLLC<br>350 Linden Oaks, Suite 310<br>Rochester, NY 14625 |

## INTRODUCTION

**Siragusa, J.** This employment discrimination case is before the Court on Defendant's motion to dismiss and Plaintiff's cross-motion for appointment of counsel. For the reasons stated below, Defendant's motion is granted and Plaintiff's motion is denied.

## FACTUAL BACKGROUND

Plaintiff alleges that on September 14, 2007, his supervisor at defendant, Sentry Group, accused him of leaving his work site at 2:00 p.m. and asked Plaintiff to sign a written warning. Plaintiff states he refused to do so, and was thereafter targeted by his supervisor until he was eventually fired on June 20, 2008. (Compl. ¶ 6.) Plaintiff alleges in his complaint in this case that he filed a complaint with the New York State Division of

Human Rights in July, 2008 (Comp. ¶ 8). However, attached to Defendant's papers is a complaint form for the New York State Division of Human Rights, signed by Plaintiff and notarized on June 5, 2009, with a stamp showing it was received by the Region 6 Rochester Regional Office on June 5, 2009 (Holahan Aff. Ex. B). The Court will consider the Human Rights complaint, since it is specifically referenced in the complaint before the Court. *Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference…and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit . . . .").

In his complaint filed before the New York State Division of Human Rights, Plaintiff alleged the following facts (following a question and answer format):

5. Description of Discrimination:

Please answer the following questions concerning the discrimination about which you are complaining. Please try to be as specific as possible with respect to acts, dates, and names. Please write or print legibly or attach a typed description.

A. Why do you believe that you were/are being discriminated against?

It was because of my age and race. The reason why I feel that I was being discriminated is because I was employed at Sentry Safe for 18 years; I was never given the opportunity to cross-train on new job assignments, nor was I given the opportunity to advance within the company even though I had more seniority I was not allowed to do so. Every time I was up for my annual appraisal I would receive a poor and unfair review, after I refuse[d] to sign one of my annual review[s] that I did not agree with and I wasn't given a fair raise. After 18 years of being a committed loyal employee I became labeled another disgruntle[d] black worker who was too old and too slow and incompetent to perform my job assignments[.]

> On a daily basis I would be singled out about my age, race and my ability to comprehend simple working instructions. I would be ridiculed as the eldest employee in the department, and when it was my turn for cross-training on new job assignments' [sic], I was told that someone younger was needed because they would be more suitable to comprehend and catch on quicker, and I would be the next in line for cross-training, except it never happen[ed].
>
> B. What did/does discrimination consist of?
>
> Discrimination consist[s] of limitations that prohibits a class of person(s) denial of employment opportunities based on or related to the protected characteristic of person(s).
>
> C. Do you have any comparative data (such as names of other individuals who were in the same situation as you, but treated more favorably) or other information to support your charge of discrimination? If so, describe below.
>
> I am not aware of any employee that was discriminated against and the decision was turned in their favor.
>
> D. Do you have any other information or evidence relevant to your claim of discrimination?
>
> The only other comments I have to say is, after eighteen years of honest, loyal, committed, and dedicated, service to Sentry Group, and because I refuse to sign my annual review, I was black balled and their decision was given for my termination. Also, I was ignored by Human Resources who refused to hear any of my claims, so after numerous tries of seeking help from the Human Resources department this became my only alternative.

(New York State Division of Human Rights Complaint Form, at 4–5, attached to Holahan Aff.)

Plaintiff contends that the New York State Division of Human Rights issued a decision on his complaint, and he then filed a complaint with the Equal Employment Opportunity Commission (EEOC) on July 21, 2010. (Compl. ¶¶ 9–10.) Although the form complaint Plaintiff used for commencing this case in federal court included language

requiring him to attach the decisions of those two administrative bodies, he did not do so. However, their decisions are included in Defendant's moving papers. (Holahan Aff. Ex.s D & E.) The EEOC considered Plaintiff's filing with the New York State Division of Human Rights to be a dual filing. (EEOC Notice of Charge of Discrimination, attached to Holahan Aff., Docket No. 8-3.) On February 18, 2010, Julia B. Day, Regional Director of the New York State Division of Human Rights, issued a decision dismissing the complaint, finding that, "nothing in the evidence…would indicate that the complainant's age or race played a part in the respondent's employment decision." (Determination and Order After Investigation, No. 10134310 (N.Y.S. Div. of Human Rights, Rochester, NY Feb. 18, 2010.) On July 21, 2010, the EEOC adopted the findings of the State agency. (EEOC Dismissal and Notice of Rights (Jul. 21, 2010), attached to Holahan Aff., Docket 8-5.)

Plaintiff filed this lawsuit on November 4, 2010. The time span between the right to sue letter from the State agency (February 18, 2010), and the commencement of the action here is 259 days. The span of time from the date the EEOC issued its right to sue letter (July 21, 2010) and the commencement of this lawsuit is 106 days. The time span between Plaintiff's firing (June 20, 2008) and the filing of his complaint with the New York State Division of Human Rights (June 5, 2009) is 350 days.

## STANDARDS OF LAW

### *Motion to Dismiss*

The U.S. Supreme Court, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), clarified the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which

> it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 1964-65 (citations and internal quotations omitted). *See also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)

When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000). On the other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)). As the Supreme Court clarified in *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009):

> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555, (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion

> couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 129 S. Ct. at 1949–50. Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

***Motion to Appoint Counsel***

Plaintiff has applied to the Court for appointment of counsel pursuant to 28 U.S.C. § 1915(e). Under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants. *See, e.g., Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988).

Assignment of counsel in this matter is clearly within the judge's discretion. *In re Martin-Trigona*, 737 F.2d 1254 (2d Cir. 1986). The factors to be considered in deciding whether or not to assign counsel include the following:

   1.  Whether the indigent's claims seem likely to be of substance;

   2.  Whether the indigent is able to investigate the crucial facts concerning his claim;

   3.  Whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder;

   4.  Whether the legal issues involved are complex; and

> 5. Whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination.

*Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997); *see also Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986). As the Second Circuit made clear in *Burgos v. Hopkins*, 14 F.3d 787 (2d Cir. 1994):

> the threshold requirement in considering a request for appointment of counsel [is] the likelihood of success on the merits of the claim. *See* [*Hodge*] 802 F.2d at 60-61; *see, e.g., Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172-73 (2d Cir. 1989) (emphasizing necessity for claim to have merit for appointment of counsel).

*Burgos*, 14 F.3d at 789.

### *Title VII and the ADEA — Time Limitations*

As the United States Court of Appeals for the Second Circuit explained in *Valtchev v. City of New York*, 400 Fed. Appx. 586, 588 (2d Cir. 2010):

> The ADA, ADEA, and Title VII require claimants to file a charge of discrimination or retaliation with the United States Equal Employment Opportunity Commission ("EEOC") within 300 days of the discriminatory or retaliatory act. See 42 U.S.C. § 12117(a) (ADA); 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA).… An exception exists for claims that the discriminatory acts were part of a continuing policy and practice of prohibited discrimination. The continuing violation doctrine applies "to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists." Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993). "However, multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism [*589] do not amount to a continuing violation." Id. "To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." Patterson v. County of Oneida, 375 F.3d 206, 220 (2d Cir. 2004).

*Valtchev*, 400 Fed. Appx. at 588–89.

## ANALYSIS

Plaintiff's complaint, on its face, conclusively shows that he failed to file a charge of discrimination or retaliation with either the EEOC or the New York State Division of Human Rights within 300 days of the discriminatory act. Here, the actual discrimination is alleged to have commenced on September 14, 2007, and continued until Plaintiff was terminated on June 20, 2008. His State complaint was not dual filed with EEOC until June 5, 2009, three hundred and fifty days after the last act of alleged discrimination. The continuing violation doctrine does not apply here, since all the alleged discrimination ended when Plaintiff was fired.

Furthermore, the statutes under which Plaintiff is bringing his claims in this Court require that the lawsuit be filed within 90 days after receipt of the right to sue letter, as discussed by the Second Circuit in *Johnson v. St. Barnabas Nursing Home*, 368 Fed. Appx. 246 (2d Cir. 2010), with regard to Title VII claims:

> Under Title VII and the Americans with Disabilities Act, a claim must be filed in federal court within 90 days of the plaintiff's receipt of a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"). See 42 U.S.C. § 2000e-5(f)(1) (Title VII action must be brought within ninety days of notification of right to sue); id. § 12117(a) (adopting Title VII limitations period for the ADA). Absent sufficient evidence to the contrary, it is presumed that a plaintiff received his or her right to sue letter three days after its mailing. See Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 525 (2d Cir. 1996).

*Johnson*, 368 Fed. Appx. at 248. The same 90-day limitation applies to an ADEA claim. *Guerra v. Jones*, No. 10-1242-cv, 2011 U.S. App. LEXIS 8716 (2d Cir. Apr. 28, 2011) ("we agree with the district court that Guerra failed to file suit within ninety days of receiving a right-to-sue letter from the EEOC regarding his retaliation claims, as required to bring suit

## ANALYSIS

Plaintiff's complaint, on its face, conclusively shows that he failed to file a charge of discrimination or retaliation with either the EEOC or the New York State Division of Human Rights within 300 days of the discriminatory act. Here, the actual discrimination is alleged to have commenced on September 14, 2007, and continued until Plaintiff was terminated on June 20, 2008. His State complaint was not dual filed with EEOC until June 5, 2009, three hundred and fifty days after the last act of alleged discrimination. The continuing violation doctrine does not apply here, since all the alleged discrimination ended when Plaintiff was fired.

Furthermore, the statutes under which Plaintiff is bringing his claims in this Court require that the lawsuit be filed within 90 days after receipt of the right to sue letter, as discussed by the Second Circuit in *Johnson v. St. Barnabas Nursing Home*, 368 Fed. Appx. 246 (2d Cir. 2010), with regard to Title VII claims:

> Under Title VII and the Americans with Disabilities Act, a claim must be filed in federal court within 90 days of the plaintiff's receipt of a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"). See 42 U.S.C. § 2000e-5(f)(1) (Title VII action must be brought within ninety days of notification of right to sue); id. § 12117(a) (adopting Title VII limitations period for the ADA). Absent sufficient evidence to the contrary, it is presumed that a plaintiff received his or her right to sue letter three days after its mailing. See Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 525 (2d Cir. 1996).

*Johnson*, 368 Fed. Appx. at 248. The same 90-day limitation applies to an ADEA claim. *Guerra v. Jones*, No. 10-1242-cv, 2011 U.S. App. LEXIS 8716 (2d Cir. Apr. 28, 2011) ("we agree with the district court that Guerra failed to file suit within ninety days of receiving a right-to-sue letter from the EEOC regarding his retaliation claims, as required to bring suit

on those claims. *See* 42 U.S.C. § 2000e-5(f)(1) (Title VII claim); 29 U.S.C. § 626(e) (ADEA claim).").

## CONCLUSION

Plaintiff's claims were untimely made in this case and, therefore, must be dismissed. Since Plaintiff's case has no possibility of success, the appointment of pro bono counsel is obviously not warranted. Accordingly, Defendant's motion to dismiss is granted and Plaintiff's motion for the appointment of counsel is denied.

    IT IS SO ORDERED.

Dated: May 31, 2011
       Rochester, New York

        ENTER:

                /s/ Charles J. Siragusa
                CHARLES J. SIRAGUSA
                United States District Judge